May it please the Court, the Justice Department did not violate Section 1592 by mitigating Nitek's culpability level from gross negligence to negligence here. Neither the Trial Court nor Nitek have identified any procedural violation in the decisions or in the briefs. And nothing... They did suggest a procedural violation. They suggest a lack of specificity in stating what the charge was. There was nothing in the statute that requires the Department of Justice to file a complaint that mirrors the penalty notice by customs. Well, but in the absence of a penalty notice that we're operating on, there's no basis to file a complaint, right? Well, there's a notice of a violation of Section 1592, and if you look at the legislative history of Section 592, a violation of Section 592 involves a material false statement in the entry or introduction of the charge and... And has various penalty levels. It has various penalty levels, yes, which are entirely up to the Court's discretion. And let me add, in this case, negligence was always before customs and it was before the Trial Court even was going to hold a trial on negligence, even though Nitek was not going to be required to pay a penalty for its own negligence. The Trial Court was going to hold a trial on negligence? The Trial Court would have held a trial... You said it was going to hold a trial? We were going to have it end up with a trial on negligence because until Nitek... ...was admitted to judgment under Section 592D, we would have had to have had a trial to determine whether Nitek was negligent and would have been required to pay lost duties. But you talk about negligence, but there's no culpability level spelled out in 592D, correct? That's true. All there is is a violation of Section 1592A, which, if you look at the statute as a whole, it shows that there's a unitary violation. Can I ask a question about the process here? This seems to me to be an instance in which a statute got written and you got customs on the one hand, which is in the Department of Homeland Security and Justice. Justice are the lawyers for homeland, but the lawyers and the clients never talk until after the charges are brought. Isn't that what's happening here? I mean, so obviously here what happened was that justice decided we don't think we can win on gross negligence case, so we want to try a negligence case. But the agency wants you to try a gross negligence case. So there's no communication. We ordinarily, in the real world, the client talks to the lawyer and the lawyer says, I can't win one of those cases, let's win one of these, right? That's what I'm talking about? I mean, isn't this going to happen all the time? Well, yes, but for, I think, a different reason than what you're inferring. There's actually a limitation problem here because if justice had discovered in time that it didn't think it could win a gross negligence case, it could have gone back to customs and said, charge them with negligence, right? In theory, yes, but there are thousands of penalty proceedings every year and the vast majority of them settle. So these are... The vast majority of them settle because there's a fair and open opportunity for the importer to talk with the charging official about whether or not there's a case here. And that's exactly what happened. And that's what I thought. The trial judge was saying this importer was entitled to have that opportunity to duke it out with customs on a negligence charge as well as a gross negligence charge. And that's what happened here. NYTEC did argue before customs that it exercised reasonable care. It raised... But that wasn't saying that it wasn't negligent. Yes, it did. It argued... Well, there's a disagreement. We've got the judge thinking that there's been a flat out statement. And when you read what was actually said, it doesn't square up with what the judge said. Well, if you look at JA 121, I respectfully disagree. They contended that they exercised reasonable care. And on top of that, contended that there was a reasonable disagreement with regard to the classification of the merchandise. And that's exactly an absolute defense to a negligence charge. But that was the argument before customs. And would you agree that there's a difference between being charged with gross negligence and establishing the grounds of gross negligence and saying, however, we'll impose only two times, not four times, the penalty as compared with simple negligence where there are differences in the burdens of proof, in the items of the offense, on the shifting of the burden of coming forward? This is really what they're complaining about. And I would... One would think that in something as rigorous as this kind of procedure, they ought to be entitled to rely on the statute, don't you think? And they still have not pointed to any particular violation of the statute. Yes, they're entitled to rely on the statute, but they haven't identified any particular provision that was violated here. So you're saying in this case, we should forget the statute? No, not at all, because the statute provided a process that customs was to comply with, and the agency did comply with the statute. And the Department of Justice... The agency complied with the statute. The agency charged gross negligence. But then the assessment occurred as to whether there was gross negligence. There was a whole opportunity to consider that. And that whole period, that whole discussion was exhausted.  So you can't just take the charge of commerce, of the charging agency, and just come up with a whole different charge. Well, first of all, yes, because the Department of Justice has plenary authority over litigation. So DOJ certainly has the authority to allege a different culpability level under section 592. Not if there's an administrative exhaustion requirement that hasn't been satisfied. DOJ just can't pluck something out of the air. But there is no administrative exhaustion requirement under section 592. It requires customs to take certain actions, which it did here. But there's nothing that precludes the United States from raising a different level of culpability. And in fact, as a factual matter, NYCHAC always knew that its negligence was on the table. Negligence was an issue with respect to section 1592D. And under this court's language in Ford, negligence was necessarily, quote, an issue considered in the proceedings before customs. So there really- But there's a difference between being negligent for purposes of paying the duties and actually suffering a penalty for that. Yes, there is a difference. And because the penalty levels are less for negligence than they are for gross negligence, or at least the maximum penalty levels. However, that brings us back to section 1592E, which says that all issues are tried de novo. And in the legislative history, in the Senate report, the committee said that this provision would change existing law by permitting the court to make its own judgment about the appropriate remedy. We went through that in detail in Ford. And the court here, the CIT, analyzed that issue in detail. And what it said is that E was designed to allow the courts to assess de novo the factual underpinnings as it relates to the penalty, not to simply institute a totally different proceeding. De novo review still implies review. It requires review of the facts on the record, we believe, that before the court made in trial. And one important thing. Based on the charge that was presented below. We review things de novo all the time. But we can't come up with new claims of infringement or new claim constructions that never occurred below in a patent case, even if we're reviewing certain things de novo. But nothing in the statute prevents the Department of Justice from raising, from filing a complaint that has an administrative culpability level. And NITEC was always on notice that. You're saying nothing in the statute prevents it. What in the statute permits it? Well, the Court of International Trade. That's exactly what the Court of International Trade was saying. There's no permission to do this. And there is an administrative process here and one that follows. Well, if you look at section 1592 as a whole, once customs has alleged a violation, authority with respect to litigating over that violation turns to the Department of Justice. And the trial court has jurisdiction under section 1582 over any matter to recover a penalty. It does not require that the penalty requested be exactly the same as that alleged by customs. So you're asking this panel to overturn Ford? No, not at all. Because Ford is very, very different from this case. Ford involved the case where there was an issue that was never considered in the proceedings before customs. But here, negligence was necessarily considered and it was decided. That's not what you just argued. You argued that justice has plenary authority to decide what it's going to charge as it relates to the penalty. So under Ford, we would have to wipe all that out because we'd have to say Ford's wrong because justice was allowed to charge whatever penalty it wanted, higher or lower. These are, well, Ford, first of all, the facts of Ford are very, very different from the facts of this case. So Ford can live in harmony with this case in allowing the Department of Justice to allege a lesser included penalty. Just because it's lesser? With respect to what I think what Judge O'Malley's asking is what's the source of the power? And the source of the power, if you win this case, would also implicate the source of the power in Ford. If you have the authority to control the case, if you will, once it is handed to you by your client, then what's the difference between upping and lowering? Well, at that point, there might be other considerations that the court would look at. You could take Judge O'Malley's question right where we're at. In theory, what is the difference on your power theory, your statutory power theory? Well, the difference in our statutory power here is applying the lens of Ford is that there needs to be an issue considered in the proceedings before customs. And that's exactly what we have here with respect to a lesser included offense. That would not, under Ford, the issue that was not considered was the amount of duties owed were final and conclusive. And it was the defendant that sought an offset of its penalty based on a differing inner value. Well, that's a practical problem here. I mean, I'm surprised in a way that justice is investing as much time and energy in this case as it is. Is it that there are thousands and thousands of these cases and justice feels that customs overreaches and charges gross negligence in too many cases and you lose all the penalties? So you'd rather dial them all back? What's going on here? No, well, no, not at all. First and foremost, the government shouldn't have to specifically allege every lesser included charge first in customs penalty notices. Why not? Because you say in your brief it's a simple matter to do. Apparently, everybody thinks that customs can charge any alternative. I don't quite understand why that's so, but you agree in your brief that this problem is easily remediable in the future by whenever customs charges gross negligence, just make certain they also charge negligence. Then there's never going to be any problem, right? Well, we agree that customs can charge in the alternative and in a case where customs does charge in the alternative, then there's no problem. And shouldn't that be the rule going forward so these cases don't ever happen again? But the administrative difficulties here are going to prevent, are going to basically allow a certain number of violators to be off the hook. You have some pipeline cases. That's why I was asking. You've got a bunch of cases where customs charge gross negligence and justice says I can't prove those. And so we're going to lose whatever penalty we can get because the statute's run and nobody's going to waive off the statute. I'm not currently aware of any pipeline cases, but there are hundreds of ports of entry, large numbers of penalties. And all of which can be cured in the future by charging in the alternative. But it imposes an additional administrative burden on the agency. We never. Doesn't the 5092E specifically say that justice can seek recovery of any penalty charged under the statute, implying that there had already been a charge under the statute? It doesn't say that justice can come up with a new charge under the statute. It says, correct, it says any proceeding commenced by the United States for the recovery of any monetary penalty claimed under this section. Well, once a penalty makes it to the Court of International Trade, the claim is by the United States and it's raised by the Department of Justice. So the United States can essentially change it whatever it wants? That's just a statutory interpretation. If you were to say claimed under the statute, you're saying claimed under the statute is not what customs claims, it's what justice chooses to claim. That's correct. And if you look at your basis for interpreting the statute that way, instead of interpreting claimed to mean claimed by the claimer. Well, once a case makes it to the court. When you talk about a claim in a lawsuit, do you ordinarily think that the claim is being made by the lawyer who's representing the claimant, or is the claim made by the claimant? In ordinary language. The claim's made by the claimant, which is the United States. The claimant is the United States? Yes. The claimant is customs, a branch of the United States. We respectfully disagree. Is the claim made by the Department of State? It's made by the United States. It's not an army? It's made by customs, isn't it? No, the client of the Department of Justice is the United States as a whole, not any particular agency. But the logical implications of your argument are amazing, because if you take it to its logical extreme, that means that any agency can have all of its procedures and do whatever charges it wants. And justice can come in and say, you know, I don't like that. And I'm the United States, so I can charge anything I want. I mean, you throw the whole Administrative Procedures Act and everything under it into a tizzy under this argument. Well, first of all, this is not an APA case. It's a de novo case. And I think that that parade of horribles would not really occur. If you look at our secondary argument. Well, it's a de novo case. So to try and simplify where we are, isn't the issue, and the issue that I think has been joined in the briefings, whether when you get to the enforcement proceeding, which brings in the Department of Justice, after the administrative procedures are over, and in fact, the Justice Department believes in all good faith that the charge was too extreme for gross negligence, and also perhaps that for enforcement, simple negligence is easier to resolve, and perhaps a more just result. Can that change be made in the enforcement proceeding? There undoubtedly are mechanisms for returning to the administrative process if, in fact, the Department of Justice believes that the charge was too dramatic or too extreme. But skipping, can all of these steps be skipped because they're different grades of violation? And it seems that that's a difficult position to take when this is, in fact, an administrative process that reaches us. Well, first of all, yes, the Department of Justice can certainly refer a matter back to customs to take a second look at culpability level. But as a practical matter, importers generally are required to follow what's called shared compliance. Because of the millions upon millions of entries made every year, customs really has to rely on importers to be truthful and accurate in all of their statements. There's no contrary. That's not before us, as I see the record, whether they were truthful and accurate. It's a matter of negligence or gross negligence. Here, NYCHAC has stipulated to enter entry of judgment under Section 1592D. Therefore, it's conceded that it violated Section 1592A. Judgment for liability for the excess duties, not an entry of judgment for negligence or gross negligence. No, we see that as an entry of judgment for negligence because NYCHAC conceded a violation of Section 1592A, which proscribes entry or introduction of merchandise through grossly negligent, negligent, or fraudulent material false statements. How can you say that they have conceded negligence, but not conceded gross negligence? Therefore, you will reduce the charge to negligence and seek the penalty or obtain the penalty. But if it is a de novo proceeding, don't you have to then prove the elements of simple negligence with all of the shifting of the burdens? Yes, generally we would. And that brings up what we see as the absurd result of the trial court's opinion, which was in order for the government to obtain a recovery under Section 1592D, which is the recovery of lost duties, there has to be a finding of at least negligence. There has to be a violation of Section 1592A. So what happened here was the trial court said, United States, you may not recover a penalty against NYCHAC, but we are going to hold further proceedings on whether NYCHAC was at least negligent. And if NYCHAC was at least negligent, then NYCHAC will owe the lost duties. So although determining that NYCHAC was free of any obligation to pay a penalty, it still had to go through negligence proceedings. But you haven't done that. This is an enforcement proceeding. That's correct. And we're enforcing under Section 1592A and D. So we're seeking a penalty, which the maximum penalties are identified in Section 1592C. And we're seeking lost revenue under Section 1592D. What you're also missing here, it's one of the reasons these things settle, is because a party like NYCHAC here might have the incentive to go ahead and say, OK, we don't think we did anything wrong here, but we'll go ahead and pay the lost duties. Because the government didn't seek to impose a penalty on us except for gross negligence. And we know they can't prove that. So we'll just agree to the lost duties, and we'll move on. But then the Justice Department sweeps in and says, well, you know, you can't have that kind of settlement because we've decided that you should get a penalty based on your agreement to pay those duties. That's sort of a misunderstanding of how this stuff works.  in these kinds of circumstances. Well, first of all, we respectfully disagree with that, because NYCHAC had the opportunity to submit a mitigation petition. And it submitted a letter, which was not, in our view, a petition. So it had the opportunity to avail itself of that permissive remedy, and it did not do so. But again, that was on the assumption that they were mitigating a gross negligence claim. And one benefit that alleged violators get if they submit a petition under Section 1618 is that they get a fresh look at the penalty, the culpability level, everything by customs. And at that point, the agency could have mitigated the penalty or the culpability level to gross negligence. Everything was still on the table. Let's hear from the other side, and we'll save you some time for rebuttal. Thank you. Mr. Burgess. Your Honor, I do want to start with a few comments about things that have been said by the Department of Justice here. And it's important to remember when he's saying that there's nothing in the statute that forbids them from claiming a new level of culpability, he's ignoring the requirements of 2368, which is an exhaustion requirement. And granted, that's not in 1592, but it clearly applies, as numerous courts have said. As the court below felt, the court said, obviously, that it has grounds, in some instances, from waiving the exhaustion requirement. It said it didn't believe those were appropriate here, and it said that justice waived all of those. So in essence, this case does present the issue where justice was required, and that customs was required to exhaust administrative remedies. And the penalty that was then sought in the court had to be consistent with that notion of exhaustion. So I think that's important. The best argument that they really have is that in order for you to pay the duties, there has to be at least a minimum level of negligence. Correct? That is correct. Or you at least have to concede a minimum level of negligence. Yes, but as the court below said, the proceedings under 1592D for negligence are not the same as they are under 1592B. So just because, I mean, customs could bring a penalty, could decide to bring a negligence case on its own, or a duty recovery case on its own, and not assess the penalty. Well, they do all the time, right? Right, right. And here. So what's the difference between negligence under 1592B and negligence under 1592D? There's probably not a difference in terms of those. There is, however, a difference in the context of the case when that's being done. It's important to realize that what happened here, and this goes back to the earlier point of why we settled, which justice is now trying to say is a concession that we owe some kind of a penalty. In fact, we disagreed throughout that we had been grossly negligent. We wanted to bring that issue, and in essence, the issue as to whether it could change the level of culpability to this court. So in order to not have a trial, in order to avoid the expense of a trial, the expense of this being, for my client, sufficiently high, we went ahead to settle to take that issue off the table for the sole purpose of getting the issue here as to whether justice could alter, after the customs proceedings, the level of culpability. It's important to understand why, in many instances, that will be prejudicial to and why it could have been prejudicial here. When justice alleges gross negligence, it is required to prove wanton disregard for the statute and for one's duties. And so one can rebut that, in essence, by saying simply, I didn't have the requisite state of mind. And if that is correct, then the case is over on that level. If that's all that customs has alleged, then all you are required to say under that point to refute it is, I didn't have the state of mind. And look back at the facts here. This was a classification fight, which had been up and down in customs and in front of the Federal Circuit once as well, in terms of taking these gas meter swivels, which we had said were iron parts, not elsewhere specified or indicated, and which they had said were threaded tubes, and which other people had said were gas meter parts. And it was an issue, in essence, of some sort of a disagreement about what was going on, but hardly a case for saying that we had simply just not cared about what the appropriate classification was and had wanton disregard. And so when you go to the critical letter, which doesn't use the words reasonable care, the way the court said. But instead, and this was a letter that was sent to customs 26 or 27 days before they filed suit. And it was an offer of settlement to more or less end the issue. And in arguing for why that should be done, it said, look, none of the courts that looked at any of this, that went back and forth, said that we had acted with wanton disregard. We had a reasonable disagreement over classification. And that was their position, was, in essence, that they didn't have the state of mind. It does state in passing, but not in any sense it can be talked about really bringing its argument that, in fact, let me find this. Well, at least it says that where there's a difference in issue over classification, that's hardly negligence, much less gross negligence. So they said that simply in passing. But in all of this, none of that was ever addressed by customs. What they did was essentially they turned this over to the Department of Justice. Your point, when justice got this and looked at it and said, whoa, this is not a case where we could prove negligence or gross negligence. This is, I mean, it's a small part. It's hard to figure out what the classification is. This is going to be a tough one. It remained possible, I believe, for them to go back to customs and say, you could issue a penalty notice, reissue a penalty notice on negligence at this point. But from a practical viewpoint, indeed, why can't the prosecuting entity, the Department of Justice, come into the enforcement proceeding and say, no, we are going to ask for four times the duty. We're only going to ask for twice the duty. That's a lesser burden on you. That's easier. Well, no, actually, when they do that, they shift the burden at that point. If they were doing gross negligence, they would have to prove all of the elements. If it shifts the burden, is that really the problem? Yes. By taking that, now the burden has been shifted to me to disprove that I wasn't negligent. In fact, they keep saying that we had notice of, by gross negligence, we had notice of everything in front of them. Well, we didn't have notice that they could go in. We had notice that they were going to try to prove all the elements of gross negligence. We didn't have notice that we would wind up being in a situation where we had to prove that we were not negligent. So that shifting of the burden of proof is essential here. And it causes a prejudice to the client who believed that it had addressed the issue before customs by saying that it didn't have the requisite state of mind. Customs, the Department of Justice obviously believed that, didn't believe it could win that. And so instead of going back and trying to fix that process, it filed the suit. As the court has noted, this is a simple matter. Rather than having to worry about, from the point of view of an importer. Were they out of time to go back? Hadn't the statute of limitations run? What's the implication of the statute of limitations? Well, the statute of limitations had run four years ago. And NITAC had waived the statute of limitations three times. And waived it up to a particular point in time. Each time, each time customs comes in. I was going to say, it looked to me on this record like the point in time that you'd waived to is gone. Not at the time. They filed the court, they filed the case, 26, 27 days after our letters, which was the date on which our last waiver of the statute of limitations expired. But there had been a number of statute of limitations waivers in this so that the whole issue of what was going on, as you noted from the record, went up to the federal circuit as everybody was trying to figure out what to call these. In fact, because they hadn't done that in a proper fashion, they had been a scope determination. I just was raving because it looked to me like in this particular case, there might not have been time for justice to come back and talk with the agency and get a different charge. When in the ordinary courts, you say there may well be time to do this. I should think that in a case like this, that there were, in essence, 26 days left. I mean, that is a short period of time. But I think that's plenty of time to go back into customs and to readjust that issue in this point. Justice hasn't begun to look at the case until it's referred over to bail. Well, it is. There isn't any cooperation. But it's got to look at the case within the 26 days to file it under Rule 11. I mean, it's got to make some sort of decision. And within that, if it comes to that period of time, I scarcely believe that it comes to that determination the day before it's filed. It makes that determination, I think, relatively early in that case. I could be wrong. But I thought part of the reason why justice is pushing as hard as it is on this case is because it has statute of limitations cases, problems, in many, many of these cases. And they're cured. It may. But that's not in the record here. Indeed, what one can't, I mean, this is, as everybody, I think, understands, is easily the prejudice to the importer is easily fixed by customs alleging all three alternate levels. And we cited cases where they've done that. I know they've done that. And there's never really seemed to have been a challenge to that. But don't you think you could conjure up an argument that there's some impropriety in doing that because you're not really putting the importer on notice as to what it is they're actually being charged with? No, I think at that point, as an advocate looking at it, then I know, essentially, I'm going to have to argue all of these things in front of customs. And I'll respond to that if they just charge fraud, which happens, and you go in with one thing, and if they charge negligence. And you are going to, I mean, you're going to try to base your arguments with customs in a way that is an efficient use of legal resources, an efficient use of the importer's time. And you're going to argue against what they charge. If they charge all three, then you'll understand that you have to do that. So I think cases have said that they can allege those alternate levels of culpability. And they certainly have done that. And I'm unaware of any court that has challenged their ability to do that. If they do that, this problem never arises here. Whereas by not doing it, it puts somebody in a situation where they're going to make one argument. And indeed, even on the basis of that argument, later go in and settle and pay the duties as we did here. And then, in essence, have justice continue to argue that settlement is a concession of negligence. I think it's easily solved by doing that. It's also important to, I think, important to understand that the threat of the government's argument about de novo review and the legislative history throughout is, as the court pointed out, one that ultimately says that justice can go back in and charge both higher and lower levels depending upon what it likes. That's the thrust of its argument. It says so a number of times in the brief, where it says, there need not be any symmetry between the charge and what we find. In an effort to try to get around that, it says, OK, it comes up with a lesser-included offense notion, which it tries to import from criminal law. There's nothing, there's no cases that support that. Indeed, it's hard to imagine that would come in, because the statute doesn't say that it can recover an amount of a penalty claimed unless it's not claimed but as a lesser-included offense. The statute says that they recover the amount claimed, which I think is relatively clear at that point. Nor is there anything in there that suggests that charging one of these, in essence, gives complete notice to the other of all of those items. The other important thing, I think, in terms of assessing this, is to assess the impact upon and the statutory impact of shifting of the burden of proof as each of these is set up. The court, the Justice Department, wants to say, in essence, I have said that you misclassified the goods, and that's all I need to say. And everything else is, essentially, at that point, on the table. And in fact, by saying then later that having done that, I can up the level of credibility, it's going against precisely what this court said in Ford and what was said in Optrex, which was that, in fact, what the de novo review provision means is that we don't accord any deference to what customs found in the proceedings below. It does not, however, permit us to open up the proceeding to any other theory of liability that could subsequently be determined or alleged by the Department of Justice. Over 26 years, I've seen a lot of customs classification cases where the importer disagrees with customs as the classification, which is how this case started. How, in the practical world, how do cases morph from classification cases into penalty cases? I mean, it does so in a number of issues. I think that what happens is that they morph into these cases because, in this instance, customs came in with a very large penalty, and it looked at it. It felt that it could get gross negligence, and it was seeking to recover that revenue. And although, as you can see from the joint appendix below, NYTEC tried on numerous occasions to pay both the past duties and a penalty. Those are rejected by customs. I'm not clear why. The record doesn't disclose why those offers at that point were rejected and how we got to that situation. In sum, it seems to me that, ultimately, the government's position that a lesser-included offense can simply be recharged doesn't have a basis in the statute. I don't believe it's consistent with the language that this court's language in Ford. I believe it causes an unfairness to the importer who really doesn't know what he's arguing at that point and may not have his arguments placed in front of the administrative agency. OK. Thank you, Mr. Burns. Thank you. OK, Mr. Tussini, you get the last word. Just wanted to make two quick points. First, NYTEC spoke about shifting of the burden. The shifting of the burden already occurred because the government filed a count in the complaint under 1592D. So the burden had already shifted to NYTEC to demonstrate that it was not negligent. That's talking about the burden that it faces in front of the customs. Well, it always faces the burden if it doesn't want to pay lost duties under Section 1592 to demonstrate reasonable care. Right. It's just saying, when I go to Goddard and go in, I've got to build up my arguing positions. I'm going to go and talk to somebody in customs. I'd like to know what it is I have to prove or disprove. And in this case, customs is only saying we're going after you for the enhanced penalty of gross negligence. That's all they have to come prepared to argue. Well, in this case, that's exactly what did not happen. Because NYTEC had to come forward. If it wanted to escape paying any duties, it had to come forward and demonstrate reasonable care. So the issue of NYTEC's negligence was always on the table. It's not the time to escape the enhanced duty under gross negligence. It says it already offered to volunteer to pay some penalties, and the government said, we don't want this. I believe they offered to pay duties. I'm just talking about trying to put it, because you were talking about when does the burden shift. I understood Mr. Burns's argument. He's talking about fairness to him when he's in front of the deciding of the person who's charging. That's what I understood him to be saying. And our view is, and I think it's the correct view, is that they were always on notice of the requirement that they have to prove reasonable care. And one aspect of imposing such a rigid system on the agency is, as we noted in our brief, importers who don't respond to penalty notices, maybe they've waived affirmative defenses that they could have raised to customs back during the administrative process. And we certainly don't move to strike defenses on that basis. For these reasons, we respect the request that the court rehearse. Thank you. Thank you, counsel. The case is taken under submission.